**DISTRICT 50, UNITED MINE WORKERS OF AMERICA; and Local Union No. 12999, of District 50, United Mine Workers of America**

v.

**REVERE COPPER AND BRASS, INCORPORATED.**

Civ. A. No. 12948.

United States District Court
D. Maryland.

April 24, 1962.

William J. Yarworth, Dundalk, Md., for plaintiff.

H. Vernon Eney, Baltimore Md., for defendant.

WINTER, District Judge.

In a suit brought under § 301 of the Labor Management Relations Act of 1947, 29 U.S.C.A. § 185, to require defendant to comply with a decision of an arbitrator, defendant moves for summary judgment.

The decision of the arbitrator was rendered on May 23, 1960, in regard to the lay-off provisions of Articles of Agreement and Supplemental Wage Agreement (the "Contract"), dated December 8, 1958, between the parties.[1] The arbitrator obtained his authority to act in accordance with the grievance procedures of the Contract,[2] which had been invoked by plaintiffs on February 9, 1960 in regard to a reduction in work force initiated by defendant on February 7, 1960. The arbitrator's decision related specifically to the lay-off practices to be observed by defendant in the lay-off of its employees covered by the Contract, and constituted an interpretation of the following portion of the Contract:

## "ARTICLE V

### "Seniority

"(1) Lay-offs and re-hiring shall be based on plant seniority and on the ability of the employee to perform the job.

"(a) Plant seniority shall be defined as the employee's continuous length of service at the Baltimore Division (Tube Plant and Condenser Tube Plant).

"(b) Departmental seniority shall be defined as the employee's total length of service in any one of the departments.

"(c) Ability shall be defined as the employee's faculty to perform a job in accordance with the product quality and production standards for the job. The determination of whether or not an employee has the faculty to perform a job will be based on the employee's previously demonstrated performance on jobs on which he has been classified as to skill, experience, efficiency (efficiency means the ability to meet normal production standards), dependability and physical fitness. Seniority will not govern unless two or more employees have approximately equal ability as defined above."[3]

The other significant provisions of the Contract are found in Article VII, "Grievance Procedure":

"The appointment of such arbitrator and his decision on any matter which properly shall have been referred to him shall be final and binding upon the DIVISION [defendant], the UNION [plaintiff] and all employees concerned therein. * * *

"The authority of the arbitrator shall be limited to grievances involving the interpretation and/or application of the contract.

"It is understood and agreed that no arbitration decision made hereunder shall constitute a binding precedent with respect to any renewal of an existing contract or any making of a new contract between the

---

1. By its terms the Contract would have continued until December 31, 1960, but, by agreement of the parties, it was continued in effect until January 30, 1961.

2. The grievance procedure, set forth in Article VII of the Contract, provides four successive steps for disposition of grievances, with a provision for arbitration by the Federal Mediation and Conciliation Service of the Department of Labor at the request of either party if use of the four steps does not result in a settlement of the grievance. The parties here did not employ the first step. Disposition began at the second step. There, the grievance was referred to the third step without settlement. Disposition at the third step was unsatisfactory to plaintiffs. Thereafter, a fourth step meeting was held, and when it did not result in settlement, plaintiffs invoked the arbitration provisions of the Contract.

3. Article V was extensively revised in the collective bargaining agreement which became effective January 31, 1961.

UNION and the DIVISION, but the force and effect of arbitration decisions shall expire at the end of this agreement or any extension thereof."

The Step II grievance filed by plaintiff did not name any specific employee or even specify the number of employees comprising "the reduction of the work force" complained of. These omissions were not supplied at Step III or Step IV. Indeed, the arbitrator at the outset of his decision stated that eighteen employees were concerned, but added:

"It was agreed at the conclusion of the arbitration hearing that the arbitrator would limit himself to a decision with respect to the scope and meaning of the seniority provisions of the agreement and that their application with respect to specific employees who were laid off would be made by the Parties."

After discussing the various contentions of the parties, the history of various seniority provisions contained in various past collective bargaining agreements and his own views, the arbitrator summarized his decision:

"To recapitulate: If a junior employee is on a particular job and his work history viewed as a whole *clearly* demonstrates that he has greater ability than does a senior employee who has not performed that particular job, that senior employee cannot displace that junior employee on that particular job. If a junior employee is on a particular job and his work history viewed as a whole does not *clearly* demonstrate that he has greater ability than does a senior employee who has not performed that particular job, that senior employee can displace that junior employee if, and only if, that senior employee, after a short period of orientation and familiarization, reasonably should be able to meet the product quality and production standards for that particular job.

"/s/ LAURENCE E. SEIBEL
 Laurence E. Seibel,
"May 23, 1960 Arbitrator"

After the decision, representatives of the parties met on June 7, June 14, June 21 and August 17, 1960 "to review and apply the opinion and decision of the Arbitrator to particular situations, but no agreement between the Union and the Company was reached as a result of these meetings." [4]

Correspondence between them was initiated by plaintiff on September 7, 1960, charging that defendant had not complied with the arbitrator's decision, and stating, " * * * we [plaintiff] have no alternative but to proceed with the court action as originally stated." Defendant replied, September 16, 1960, making reference to previous discussions, and advised of defendant's willingness to review "the four laid off employees' claims that they have ability approximately equal to that of any particular junior employee whose job they feel they can satisfactorily perform." Defendant commented that none of the individuals laid off had made a claim, but if such a claim were filed "arbitration of any difference of opinion in the light of Mr. Seibel's decision should result in a definite conclusion on the basis of any award made." Defendant specifically requested plaintiff to submit the questions to an arbitrator.[5] Plaintiff responded, September 26, 1960, stating that it was "unwill-

4. Affidavit of W. S. Prentiss, Industrial Relations Manager of defendant.

5. "We [defendant] would be willing to group the claims for the purpose of one hearing with each claim being decided on its own merit.
 "Accordingly, we are asking the Local Union to submit these questions jointly with us to either Mr. Seibel or another arbitrator appointed by the Federal Mediation and Conciliation Service of the Department of Labor in accordance with the terms of our Labor Agreement. We feel that this would provide a speedier and more satisfactory solution for all concerned than the course you suggest."

ing to stay the filing of this suit based upon the possibility of success of any of these recommendations," and, thereafter, suit was filed.

Enforcement of the arbitrator's decision is not possible here, because it is not presently self-executing. By its terms the decision reserves to the parties the practical application of the general rules which it states. Thus, the decision constitutes an interpretation of the Contract, which becomes a part of the Contract, and if the parties cannot agree upon the application of that interpretation there would seem to be a basis for a new grievance and fresh invocation of the grievance machinery of Article VII of the Contract.

 It is the policy of National Labor legislation to promote the arbitral process, Textile Workers Union v. Lincoln Mills, 353 U.S. 448, 77 S.Ct. 923, 1 L.Ed.2d 972 (1957) ; United Steelworkers of America v. American Mfg. Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960) ; United Steelworkers of America, AFL–CIO v. Warrior & Gulf Nav. Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960) ; United Steelworkers of America v. Enterprise Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed. 1424 (1960) ; Local 174, Teamsters, Chauffeurs, etc., v. Lucas Flour Co., 80 S.Ct. 571 (decided March 5, 1962), and International Ass'n of Machinists, Local Lodge 1652 v. International Aircraft Services, Inc., 302 F.2d 808 (4 Cir., decided March 21, 1962). Hence, it is the function of the District Courts in suits brought under § 301 of the Labor Management Relations Act, supra, to compel performance by a reluctant party of its agreement to submit disputes to arbitration and to enforce the results of that arbitration, unless the arbitrator has clearly exceeded the letter and spirit of the collective bargaining agreement from which his authority springs.

The policy to compel arbitration where there is a grievance cognizable by an arbitrator is no less compelling in the instant case. Exactly what took place at the series of meetings between the parties is not before the Court, although their subsequent uncontroverted correspondence indicates clearly that defendants sought a resumption of arbitration and plaintiff resisted. Even if the Court, after full hearing, should determine that defendant had not made a genuine effort to translate the ground rules laid down by the arbitrator into actuality and ordered defendant to do so, it would be hard put to determine what constitutes compliance with the arbitrator's decision and what redress should be afforded the affected employees. Such a determination would involve an invasion of the very area denied the Court by the decisions cited above.

Reference to the language of only two need be made to establish the settled judicial recognition of the unique status and qualities which the arbitrator brings to bear in interpreting a collective bargaining contract. In United Steelworkers of America v. Warrior & Gulf Nav. Co., supra (363 U.S. p. 582, 80 S.Ct. p. 1352), it is said:

"The labor arbitrator is usually chosen because of the parties' confidence in his knowledge of the common law of the shop and their trust in his personal judgment to bring to bear considerations which are not expressed in the contract as criteria for judgment. The parties expect that his judgment of a particular grievance will reflect not only what the contract says but, insofar as the collective bargaining agreement permits, such factors as the effect upon productivity of a particular result, its consequences to the morale of the shop, his judgment whether tensions will be heightened or diminished. For the parties' objective in using the arbitration process is primarily to further their common goal of uninterrupted production under the agreement, to make the agreement serve their specialized needs. The ablest judge cannot be expected to bring the same experience and com-

petence to bear upon the determination of a grievance, because he cannot be similarly informed."

To the same effect is the statement in United Steelworkers of America v. Enterprise Corp., supra, where it is said (363 U.S. p. 597, 80 S.Ct. p. 1361):

"When an arbitrator is commissioned to interpret and apply the collective bargaining agreement, he is to bring his informed judgment to bear in order to reach a fair solution of a problem. This is especially true when it comes to formulating remedies. There the need is for flexibility in meeting a wide variety of situations. The draftsmen may never have thought of what specific remedy should be awarded to meet a particular contingency. * * * "

It is noteworthy that in the Enterprise case, supra, the Supreme Court affirmed that portion of the Court of Appeals' disposition of the case which referred back to the arbitrator the question of specific wages due employees, an issue on which the arbitrator's decision was vague.

■ In the light of the incompleteness of the arbitrator's award and the judicial encouragement of the arbitral process, this Court concludes that defendant should receive summary judgment. Plaintiff's remedy is to return to the grievance procedures which it and defendant established. To insure that this remedy will remain available to plaintiff, but not to cast doubt on defendant's bona fides in its past offers, as exemplified by its letter of September 16, 1960, the Court, as a condition to granting defendant's summary judgment, will require defendant to file a written statement agreeing to continue its past offer to arbitrate for a period of thirty (30) days after the date of final order in this proceeding, or in the event of appeal, for a period of thirty (30) days from the final determination thereof.

Counsel may agree upon an order in accordance with this opinion.