SAN ANTONIO NEWSPAPER GUILD LOCAL NO. 25, and American Newspaper Guild, AFL–CIO, CLC, Plaintiffs-Appellants,

v.

SAN ANTONIO LIGHT DIVISION and the Hearst Corporation, Defendants-Appellees.

No. 72–3302.

United States Court of Appeals, Fifth Circuit.

June 28, 1973.

Frank Herrera, Jr., San Antonio, Tex., for plaintiffs-appellants.

L. Bruce Fryburger, San Antonio, Tex., for defendants-appellees.

Before TUTTLE, GODBOLD and MORGAN, Circuit Judges.

TUTTLE, Circuit Judge:

This action was brought by the San Antonio Newspaper Guild (hereinafter Union) under Section 301 of the Labor Management Relations Act, as amended, 29 U.S.C.A. § 185, for enforcement of an arbitrator's award. On the basis of a different arbitrator's subsequent interpretation of the original award, the district court entered summary judgment in favor of the Company, and the Union now appeals. We affirm in part and reverse in part.

The facts are as follows: On May 6, 1971, John Sweet, a sports reporter, was discharged by the Company and was at that time given severance pay in the amount of $4,760.28 and pay in lieu of notice in the amount of $340.02. In due course Sweet grieved his discharge pursuant to a collective bargaining agreement then in effect which provided for final resolution of disputes by arbitration.[1] On September 20, 1971, an arbitration hearing was held before Arbitrator Peter Florey who thereafter rendered the following award:

"(1) Grievant shall be reinstated forthwith without loss of seniority.

(2) Grievant shall be made whole for any loss in earnings for the period of May 6, 1971, to July 23, 1971, and from September 20, 1971, to the date of his reinstatement.

(3) The Publisher shall comply with the mandate of Article IV, Section 1."

It is the second directive in this award which led to the dispute here involved. By letter of January 10, 1972, the Business Manager of the Company advised Sweet that he was subject to immediate reinstatement, but that Sweet should first contact the business office to resolve the financial details of his reinstatement. The parties, however, could not reach agreement on the financial implementation of the award. The Company's position was that the amount it would otherwise have owed Sweet as back pay for the period prior to his reinstatement ($4,386.26) should be set-off against the total of Sweet's interim earnings of $3,560.00, his severance pay of $4,760.28, and pay in lieu of notice of $340.02. Under this method of computation there existed an overage of $4,274.-04 in Sweet's favor which, the Company claimed, he was obliged to repay. Sweet, however, was of the view that the award required the Company to pay him the full amount of back pay for the period specified, the only permissible deduction therefrom being payments for unemployment compensation which, in his case were not made. He therefore declined the Company's proposed financial settlement, although he offered to return to work prior to resolution of the

---

1. Article VI of the Agreement, pertaining to adjustments of disputes, provides in pertinent part as follows:

"(1) A grievance committee, designated by the Guild, shall be established to settle amicably with a committee appointed by the Publisher, *all grievances arising under this agreement.*

(2) A grievance shall be submitted only by written notice from the complaining party to the other party briefly setting forth the facts giving rise to the grievance, the ground of complaint, and the action sought."

(Emphasis added).

Article VI then outlines the procedures to be followed by the parties in securing arbitration of a dispute and provides finally that "the award of the arbitrator shall be final and binding."

financial issues which he advised should be worked out with the Union's attorney.

The parties remained at odds with the result that on January 20, 1972, the Company requested the Union to join it in a request to Arbitrator Florey for clarification of his award. The Union refused to do so on the premise that the original award was unambiguous, making no provision for any of the deductions which the Company claimed.

On January 20, 1972, the Company filed a grievance against the Union, pursuant to the grievance machinery of the collective bargaining agreement, seeking return of the overage of dismissal pay and pay in lieu of notice received by Sweet. Shortly thereafter the Union brought this action in the district court for enforcement of Arbitrator Florey's award. While the court action was pending, the Company invoked the procedures of the American Arbitration Association to secure arbitration for the purpose of interpreting the financial aspects of Arbitrator Florey's original award. Thereafter the Company and the Union jointly selected Arbitrator Guy Horton before whom a second arbitration hearing was held on April 1, 1972. Although both parties fully participated in this hearing, the Union contended throughout that Arbitrator Horton was without jurisdiction to consider the matter and that a finding on the merits would be of no force and effect. Upon hearing Arbitrator Horton concluded as follows:

"(1) The Arbitrator has jurisdiction to interpret the award of Arbitrator Peter Florey.

(2) The Arbitrator interprets the award of Arbitrator Peter Florey to require the deduction of interim earnings, severance and dismissal pay from earnings due Sweet by the Company.

(3) The Company does not owe Sweet lost earnings as the interim earnings, severance and dismissal pay exceed lost earnings by $4,274.04.

(4) The Arbitrator does not have jurisdiction to award either party additional remedies.

(5) Mr. John E. Sweet will be reinstated forthwith without loss of seniority."

On the basis of Arbitrator Horton's interpretation of Arbitrator Florey's original award the Company moved for summary judgment in the district court. The Union, contending that Arbitrator Horton's interpretation was a nullity, cross-moved for summary judgment enforcing Arbitrator Florey's award, which, the Union averred, did not require deductions of any kind from the back pay money owed to Sweet. The district court entered judgment in favor of the Company and directed the Union to "comply with the award of Arbitrator Horton, including the return of all monies due upon reinstatement."

The Union appeals from that judgment. It here argues that Arbitrator Florey's award was unambiguous and that Arbitrator Horton was without jurisdiction to interpret Florey's award. Moreover, the Union urges, even if Arbitrator Horton's interpretation is to be given effect, the district court erred in ordering the *Union*, which did not receive the money, to repay the Company the amount of the overage existing in Sweet's favor.

■■ It is the Union's primary contention that the Company's grievance, seeking interpretation of Arbitrator Florey's award, was not an arbitrable matter and that as a result Arbitrator Horton did not have jurisdiction to consider it. Such a contention, of course, is properly the subject of judicial review in post-award proceedings.[2] However,

---

2. It is by now well-established that although courts refuse to review the *merits* of any given arbitration award, the question whether the underlying labor dispute was subject, in the first place, to arbitration under the collective bargaining agreement is ordinarily one for the courts to determine. See, e. g., United Steel Work-

under the peculiar circumstances of this case we find it unnecessary to decide the issue. While we might otherwise be inclined to agree with the Union that even under the usual standard the Company's grievance did not present an arbitrable matter,[3] we think that Arbitrator Horton's award in this instance, having resolved the dispute between the parties, should be given full effect. *Fieri non debet, sed factum valet.*

■ The difficulty we have with the Union's argument is that it would have us ignore Arbitrator Horton's award altogether and enforce Arbitrator Florey's award. This we would be unable to do under the circumstances. Arbitrator Florey's award, we think, at least insofar as it relates to financial matters, was ambiguous and thus unenforceable unless and until clarified.[4]

Paragraph 2 of the award provided simply that Sweet was to be "made whole for any loss in earnings" for the specified period. Although the Union and the Company each contended that this portion of the award clearly supported its position, there existed between them a legitimate disagreement as to its actual implementation. Arbitrator Horton was likewise of the view that the award was "incomplete and indefinite." He said:

"While paragraph 2 of the award definitely provides that the grievant is to be made whole for any loss of earnings, it is not clear whether such earnings are confined to those he would have received from the Company during his period of discharge or should include earnings received from other employers. The award is silent as to severance and dismissal pay . . . ."

We agree with Arbitrator Horton's conclusion. The term "make whole for any loss of earnings" in the context of this case could be, and was, interpreted in a variety of ways. On the one hand, as the Union claimed, it might be con-

---

ers of America v. Warrior and Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960) ; Teamsters Local Unions v. Braswell Motor Freight Lines, 392 F.2d 1 (5th Cir. 1968) ; Safeway Stores v. American Bakery and Confectionery Workers International Union, 390 F.2d 79 (5th Cir. 1968).

3. The Supreme Court has indicated that a particular dispute should not be deemed non-arbitrable "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." United Steel Workers of America v. Warrior and Gulf Navigation Co., *supra* at 582–583 of 363 U.S., at 1353 of 80 S.Ct.

Utilizing this standard we note that the collective bargaining agreement here at issue—upon which Arbitrator Horton's authority to act necessarily rested—makes no provision for grieving the *award* of an Arbitrator which, according to the language of the contract itself, "shall be final and binding." Rather, the grievance machinery may be invoked, either by the Union or the Company, for "all grievances *arising under this agreement.*" We doubt that the *award* of an arbitrator—as opposed to the *procedure* for securing arbitration—falls within the four corners of the agreement before us. If not, the award itself would not constitute an arbitrable issue.

There may be, however, special circumstances where invocation of grievance machinery might be appropriate following the award of an arbitrator. Ordinarily this would occur where a *collateral* dispute arises from an award which is *not* self-executing. See International Association of Machinists and Aerospace Workers v. Aerojet-General Corporation, 263 F. Supp. 343, (D.C.Cen.D.Cal.1966) ; District 50, United Mine Workers v. Revere Copper and Brass, Inc., 204 F.Supp. 349 (D.C.Md.1962). This is not such a case. Arbitrator Florey's award was clearly intended to be and would have been self-executing but for an ambiguity therein, discussed below, which left the parties at odds over its interpretation.

4. Hanford Atomic Metal Trades Council v. General Electric Company, 353 F.2d 302 (9th Cir. 1966) ; United Steel Workers of America v. Timken Roller Bearing Company, 324 F.2d 738 (6th Cir. 1963) ; Local Union No. 494, International Brotherhood of Electrical Workers v. Brewery Proprietors, 289 F.Supp. 865 (D.C.E.D.Wis.1968). See also, International Association of Machinists v. Crown Cork and Seal Company, 300 F.2d 127 (3rd Cir. 1962).

strued as relating exclusively to what Sweet would have earned in wages from the Company had he not been wrongfully discharged, regardless of whatever other outside income he might have received, in which event the Company would be obliged to make him whole for those particular wages. Yet this construction strains the meaning of the words "to make whole" which imply that other sources of income ought to be taken into account in computing what Sweet actually lost in earnings. But to what extent? The Company contended that Sweet should be put in *exactly* the same financial condition as he would have been in had he not been discharged, and no better. However, it might be concluded as well that within the meaning of the award the Company was obliged simply to see to it that Sweet was put in as good a position as if he had not been discharged and that any overage inured to his benefit. We conclude, therefore, that the second paragraph of Arbitrator Florey's award was ambiguous.

◼ The question next arises as to whether this court should itself resolve this ambiguity in the original award. We think not. We agree with the conclusion reached by the Court of Appeals for the Ninth Circuit in Hanford Atomic Metal Trades Council v. General Electric Company, *supra*. In an analogous situation that court said:

"We share the view of the district court that the opinion [of the arbitration committee] required clarification and interpretation. We also share the view of the district court that this was a task to be first performed by the arbitration committee and not the court, and that the court properly remanded the matter to the arbitration committee for such clarification and interpretation. See United Steel Workers of America v. American Manufacturing Company, 363 U.S. 564 [80 S.Ct. 1343, 4 L.Ed.2d 1403] (1960); United Steel Workers of America v. Warrior & Gulf Navigation Company, 363 U.S. 574, [80 S.Ct. 1347, 4 L.Ed.2d 1409] (1960); and United Steel Workers of America v. Enterprise Wheel and Car Corporation, 363 U.S. 593, [80 S.Ct. 1358, 4 L.Ed.2d 1424] (1960). It is appellant's position that once the arbitrators have acted, it is the duty of the court to interpret and enforce the award, rather than to send the matter back to the arbitrators, to the end that the further delay involved in sending the matter back can be avoided. We think, however, that all of the foregoing cases accept the philosophy that where the parties have elected to submit their disputes to arbitration, they should be completely resolved by arbitration, rather than only partially resolved." 353 F.2d at 307–308.

Indeed such a conclusion, we think, is dictated by the Supreme Court's admonition that "[i]t is the arbitrator's construction which was bargained for."[5]

◼ The normal course of action in such cases, then, is for the court to remand the matter to the original arbitrator for clarification.[6] To do so in this case, however, would be a pointless gesture. There has already been a clarification of Arbitrator Florey's award, albeit by a different arbitrator, Arbitrator Horton. Nonetheless Arbitrator Horton has done precisely what Arbitrator Florey would do were we to remand to him, that is, he resolved the ambiguity in the original award by careful reference to the terms of the collective bargaining agreement. We, therefore, are of the view that an appropriate resolution of this already too-lengthy dispute would in no way be served by remanding

---

5. United Steel Workers of America v. Enterprise Wheel and Car Corporation, 363 U.S. 593, 599, 80 S.Ct. 1358, 1362, 4 L.Ed.2d 1424 (1960).

6. See cases cited at n. 4, *supra*. See also, Transport Workers Union Local No. 234 v. Philadelphia Transport Company, 228 F.Supp. 423 (D.C.E.D.Pa.1964). But see, Lynchburg Foundry Company v. United Steel Workers of America, 404 F.2d 259 (4th Cir. 1968).

to Arbitrator Florey for yet another interpretation of his original award. On that basis we accept as binding on the parties Arbitrator Horton's interpretation which, we think, finally and fully resolves the issue between the parties.

█ The district court, however, did more than simply enforce Arbitrator Horton's award. In addition he directed the Union to repay the Company the amount of the overage of $4,274.04 existing in Sweet's favor, this, notwithstanding the fact that Arbitrator Horton, in construing Arbitrator Florey's award, determined only that Sweet should be reinstated forthwith, but that he was not entitled to any back pay to make him whole because he had already received $4,274.04 more than would have been necessary to place him in the same position financially as he would have been in had he not been discharged.[7] We thus think it was error for the court to enter judgment against the Union for the overage in Sweet's favor.

We conclude, moreover, that the award, as interpreted, must be deemed conclusive of the financial issues between the parties including any claim that the Company might have had for a refund of the overage in Sweet's favor.

In argument before the district court counsel for the Company stated:

"an award cannot be implemented piecemeal but you have to implement the entire award, and this has been the problem all along. We haven't been able to implement it because we haven't been able to agree with the Union on what it means."

Consistently therewith the Company had submitted to Arbitrator Horton the issue of how paragraph 2 of Arbitrator Florey's award should be implemented, it being the position of the Company, then and thereafter, that the financial aspects of the matter should be fully resolved so that the award could be implemented in its entirety.[8] This, then, was the issue which Arbitrator Horton took under advisement.

Having interpreted Arbitrator Florey's award to mean that the Company did not owe Sweet anything for lost earnings, Arbitrator Horton concluded that he "did not have jurisdiction to award either party additional remedies," thus indicating, of course, that as a legal matter he could not add to nor subtract from the remedies originally provided by Arbitrator Florey. Although the Company had claimed that it was entitled to a refund of the overage existing in

7. Arbitrator Horton interpreted Arbitrator Florey's award as requiring "the deduction of interim earnings, severance and dismissal pay from earnings due Sweet by the Company." Horton then noted that *the Company does not owe Sweet* lost earnings as the interim earnings, severance and dismissal pay exceed lost earnings by $4,274.04," and concluded that he did not have jurisdiction to award either party additional remedies. We do not see in this award any indication that Sweet, let alone the Union which had never received the monies, was to reimburse the Company for the overage existing in Sweet's favor. Horton merely concluded that Sweet's interim earnings and the like were to be deducted from the amount which the Company owed him as lost earnings and that since such deductions exceeded lost earnings, the Company did not owe *Sweet* anything.

8. At the hearing before Arbitrator Horton counsel for the Company stipulated the issue involved as follows:

"[The] award by Arbitrator Florey was in two parts: One part being reinstatement, the other parts being made whole, I think was the language he used, and I guess you could divide it up into . . . the financial aspects of the back pay part of the award which is the thing that we're here for today, to find out in Mr. Horton's interpretation the meaning of that part of the award by Arbitrator Florey and how we can implement it." Later Mr. Bannick, president of the Company, testified: "You can't implement, it seems to us, the award unless you implement the entire award. And part of that is Mr. Sweet's reinstatement. Another part of it is the settlement of the financial matters. Certainly all parts of it would have to be resolved."

Sweet's favor, Arbitrator Horton, in interpreting Arbitrator Florey's award, must have concluded that no provision for such a refund could be found in the original award; otherwise he would not have decided that he lacked jurisdiction to grant such a remedy. Moreover, it must be assumed that Arbitrator Florey's award comprehended all of the financial relations between the parties since his decision was to be final and binding. Inasmuch as Florey must, therefore, have intended his award to be dispositive of the financial relations of the parties and since Arbitrator Horton was unable to find in that award any provision for a refund to the Company of any overage existing in favor of Sweet, we think the question of refund is no longer open and that all of the issues between the parties have been finally resolved. Such a conclusion is completely in accord with the Company's consistently-stated position that it was satisfied with Arbitrator Horton's award and that it sought only to implement the award in its entirety.

Affirmed in part, reversed in part and remanded for further proceedings not inconsistent with this opinion.

GODBOLD, Circuit Judge (concurring in part and dissenting in part):

I concur in the opinion written by Judge Tuttle except for the last portion in which he concludes that the award, as interpreted, "must be deemed conclusive of the financial arrangements between the parties including any claim that the Company might have had for a refund of the overage in Sweet's favor."

When Sweet was discharged he was paid severance pay plus pay in lieu of notice. He filed a grievance contesting his discharge. Arbitrator Florey rendered an award which, (1) unambiguously said that Sweet should be reinstated forthwith, and (2) ambiguously said that Sweet should be "made whole" for any loss of earnings. The Company offered to reinstate Sweet but contended that from what it would have owed him as back pay there should be deducted his interim earnings and the severance and notice pay he had received, with the result that rather than the Company's owing Sweet he was indebted to the Company in the amount of $4,274.-04, which the Company insisted he should pay. Sweet and the Union took the position that Sweet was entitled to the full amount of back pay, with nothing deducted therefrom. With the parties pursuing interpretations 180 degrees apart, the company asked for arbitration to determine what Florey's award meant. The Union refused and filed suit to enforce Florey's award.

The Company proceeded with the interpretive arbitration before arbitrator Horton, with the Union present but disputing his jurisdiction. Horton interpreted what Florey had said to mean the following:

—The award required the deduction of interim earnings, severance and dismissal pay, from earnings due Sweet by the Company. (¶ 2).

—The Company owed Sweet nothing, since the deductions exceeded lost earnings by $4,274.04. (¶ 3).

—"The arbitrator does not have jurisdiction to award either party additional remedies." (¶ 4).

—Sweet must be reinstated immediately. (¶ 5).

In the subsequent proceedings in the District Court the court rejected the contention of the Union that arbitrator Horton was without authority, rejected the contention of the Union that Florey's award meant that Sweet could keep all his back pay without any deductions, accepted the contention of the Company that monies paid to Sweet must be refunded, and directed the Union to return the money.[1]

In interpreting Florey's award, Horton dealt first with the subject matter of whether the award required that there be deductions from accrued back

---

1. Obviously the direction to the Union was wrong. The money had not been paid to it.

pay. He answered that question in the affirmative. His next step was to consider the effect of making the deductions, and to that question he said two things—first, the Company doesn't owe Sweet anything (¶ 3), and second, "the arbitrator does not have jurisdiction to award either party additional remedies" (¶ 4). Paragraph 3 is clear. What does paragraph 4 mean?

Three significant paragraphs of Horton's opinion dealt with the matter of return of the overage.

> The Company requests the arbitrator to make Sweet's reinstatement contingent upon his paying the Company the overage and that the arbitrator set a deadline within which Sweet may do this or forfeit his job. To grant the company's requested remedy would create an award in the nature of granting monetary relief. Awards for money damages are based upon a violation of the working agreement and *Sweet's refusal to return the overage cannot be considered as a violation of the contract for its language does not cover such a situation. This reduces the question to one of whether the present arbitrator may fashion a remedy of the type requested by the Company. He is not convinced he has jurisdiction to do so.* (emphasis added.)

> \*  \*  \*  \*  \*  \*

> The arbitrator has not found, nor has he been cited, any case law or arbitration awards which provide that the employee's reinstatement shall be contingent upon the return of dismissal or severance pay within a certain period of time, and this may be said to be particularly true where the arbitrator's jurisdiction is confined to the interpretation and implementation of a former award. *The arbitrator's refusal to grant the relief requested by the Company does not prejudice the Company's right to pursue any legal remedy it may have for the recovery of the overage.* (emphasis added.)

It should be observed that Sweet or any other discharged employee similarly situated may or may not have retained the overage, or all of the same, and unable to raise the sum required to be paid by the deadline fixed by the arbitrator. In such a case, as here, this could result in the employee losing his job and its related benefits—a job from which it had been determined the employee had been unjustly discharged.

Quite clearly, Horton said that there was no way in which he could order Sweet to pay what would amount to money damages because the failure to return the overage was not a violation of the working agreement and, therefore, was not within the scope of arbitration under the contract. Equally clearly, Horton construed Florey's award to leave open to the Company the right to *seek* recovery of the overage through "any legal remedy it may have." The quoted language dovetails exactly with Horton's earlier statement that an award could not be made in the arbitration because Sweet's failure to return the money did not violate the working agreement. Horton's interpretation was that whether the Company could recover the money by reason of legal relationships and obligations existing between it and Sweet in the penumbra outside the working agreement was a matter left open for other forums. In short, he construed Florey's award and implemented it to the extent he considered possible, and he recognized that further implementation must occur in a judicial proceeding. Indeed any other conclusion by Horton would have been inappropriate. "[A]n arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice." United Steelworkers v. Enterprise Corporation, 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424, 1428 (1960).

It is at least arguable whether the matter of return of the overage was, as Horton thought, outside the scope of his arbitral power or was a part of the "merits" of the controversy over inter-

pretation which he was brought in to arbitrate. And it is arguable as well whether Horton's task was a proper function for an arbitrator. See footnote 2 of majority opinion and accompanying text. The majority avoid these questions by concluding that in the peculiar circumstances it would be pointless to remand the first award to Florey for yet another interpretation and that an appropriate resolution is to accept Horton's interpretation as binding. Judge Tuttle's opinion says, "we think that Arbitrator Horton's award in this instance, having resolved the dispute between the parties, should be given full effect," and repeats, "we accept as binding on the parties Arbitrator Horton's interpretation which, we think, finally and fully resolves the issue between the parties." That pragmatic approach is an appropriate one. But the "full resolution" reached by Horton included his determination that the overage issue was beyond the scope of arbitration and was a matter to be pursued in legal proceedings. The majority do not give "full effect" to his award but only carry it out to the extent it resolved the dispute, and insofar as it held the overage issue unresolvable in arbitration they reject the award and construct a new award on their own.[2] Stated in shorthand, that new award is that the overage issue has been resolved by arbitration because the parties intended it to be resolved, although the arbitrators did not resolve it and Horton found it to be unresolvable. Stated at somewhat greater length, what my brothers have done is to say that the Company lost its right to seek return of the overage, not because Florey *said* that Sweet was entitled to keep the money—Florey said no such thing—and not because Horton *said that Florey had*

*said* any such thing—Horton said no such thing—but rather because it was *intended* by the parties that Horton's award (interpreting Florey's award) be final and binding with respect to all financial dealings between the parties. I must confess that I am baffled by that reasoning. The fact that the parties and Horton *desired and intended* that Horton's award be a full implementation settling all matters does not mean that it *did* settle everything. Horton, as the interpreter of Florey's award, found that the first award *did not* settle everything. He found that he, as second arbitrator, lacked the power to settle everything. All members of the panel agree that his interpretations are to be accepted. Yet the majority sweep all this away and grant to Sweet a favorable judgment on a disputed matter the merits of which neither arbitrator reached.

As a supporting reason, my brothers say that to treat the awards as dispositive of all issues accords with the Company's position that it was satisfied with Horton's award and sought to implement that award. Indeed the Company did seek enforcement of Horton's award. But it did so with the accompanying contention, made in the District Court and on appeal, that Horton's award finally disposed of the refund issue by obligating Sweet to repay the overage and to do so forthwith. That contention was accepted by the District Court, but on appeal the Company lost on that point. The fact that the Company argued that the awards settled all issues, including settling the refund issue *in its favor*, is not probative at all that the awards settled all issues, including settling the refund issue *in Sweet's favor*. This would be true in any event—

2. Note the reference by Chief Judge Brown in Safeway Stores v. American Bakery, Inc., 390 F.2d 79 at 81 (CA5, 1968) to "slip[ping] off into that habit, easy for Judges, of deciding the merits" of arbitration matters. "The question of interpretation of the collective bargaining agreement is a question for the arbitrator. It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his." United Steelworkers v. Enterprise Corp., *supra*, at 599, of 363 U.S., at 1362 of 80 S.Ct., at 1429 of 4 L.Ed.2d (1960).

it seems to me not even arguable when the awards specifically left the matter open.

The appropriate result in this case is, of course, to leave the Company open to seek recovery by legal remedies. Whether it is entitled to recover would be determined in such a proceeding, if brought.