**PACE UNION, LOCAL 4–1, Plaintiff,**

v.

**BP PIPELINES (NORTH AMERICA), Defendant.**

No. G–01–547.

United States District Court, S.D. Texas, Galveston Division.

March 15, 2002.

Bruce Alan Fickman, Attorney at Law, Houston, TX, for Plaintiff.

Tara B. Hittelman, Littler Mendelson, PC, Houston, TX, for Defendant.

*ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; ORDER OF REMAND, STAY, AND ADMINISTRATIVE CLOSING*

KENT, District Judge.

Plaintiff PACE Union ("the Union") brings this lawsuit against Defendant BP Pipelines (North America), Inc. ("BP") to enforce or remand an arbitration award pursuant to Section 301 of the Labor Management Relations Act, as amended, 29 U.S.C. § 141 *et seq.* ("LMRA"). Now before the Court are the Parties' cross Motions for Summary Judgment. For the reasons articulated below, Plaintiff's Motion for Summary Judgment is hereby **GRANTED,** while Defendant's Motion for Summary Judgment is hereby **DENIED.** Further, this case is hereby **REMANDED** to the original arbitrator for clarification of the arbitration award, and is hereby **STAYED** and **ADMINISTRATIVELY CLOSED** pending further Order of the Court.

### I.

The present dispute arises from the arbitration of a grievance filed by the Union on behalf of a discharged BP employee, Darrell Jackson ("Jackson"). On April 24, 2000, BP terminated Jackson for failing to prove proficiency in the Pipeline Specialist II position within the required 30–day period. Following Jackson's discharge, and pursuant to the express terms of the collective bargaining agreement between the Union and BP, the Union filed a grievance

challenging BP's decision to terminate Jackson on the basis of Articles 5, 8, 9, and 23 of the collective bargaining agreement. The grievance was then submitted for final and binding arbitration before a selected neutral arbitrator, Barnett Goodstein ("Goodstein"). The Parties specifically asked Arbitrator Goodstein to resolve two issues: "Did the Company have just cause for the discharge of the grievant, Darrell Jackson, on April 24, 2000? If not, what shall be the appropriate remedy therefor?" After holding a hearing on the matter on February 14, 2001, Arbitrator Goodstein issued an opinion and award on April 30, 2001, providing that BP did not have just cause for discharging Jackson on April 24, 2000, and detailing the remedy for Jackson's discharge as such:

> The Company is ordered to reinstate the Grievant, with full back pay and allowances, for all time missed since April 24, 2000, allowing credit for all earned compensation, and unemployment compensation benefits, received by the Grievant during his time off the payroll, in accordance with the provisions of Articles 8, 9 and 10 of the CBA.

> If the employee who filled the said PSIII position at Texas City, after Mr. Wade Woods qualified as a PSII, and left that position, had less seniority than the Grievant, on April 24, 2000, then the Grievant should bump that employee, and take that said position. If the Company did not fill that position with any other employee, after Mr. Woods was promoted, but discontinued the PSIII classification at Texas City, and there was no one else there who could have been bumped, then the Grievant should be given his bumping rights in accordance with the Contract provisions.

> If there is no location in the 3–State area, served by this Bargaining Unit, to which the Grievant's seniority gives him the right to bump, as of April 24, 2000, then the Company would have the right to lay off the Grievant, in accordance with the Contract provisions, and would not have to reinstate the Grievant to his former position, or owe him any back pay or allowances.

Shortly after the issuance of Arbitrator Goodstein's opinion, the Union and BP disagreed as to the proper remedy mandated under the arbitration award, specifically with regard to the precise bumping and bidding rights available to Jackson under the collective bargaining agreement on April 24, 2000. Based on its review of the facts, BP asserts that Jackson possessed no right of reinstatement, nor any bumping or bidding opportunities on April 24, 2000, thereby compelling Jackson's layoff from BP. According to the Union, however, Jackson should have been reinstated on April 24, 2000, either pursuant to his right to bump one of three fellow BP employees, or his right to bid on subsequently posted Pipeline Specialist II positions. After twice earlier consenting to an extension of Arbitrator Goodstein's jurisdiction over this matter, BP, since June of 2001, has refused to cede to the Union's requests to remand the disputed issues back to the arbitrator for clarification. On September 7, 2001, the Union filed suit in this Court to enforce the arbitration award, or alternatively, to remand the action to Arbitrator Goodstein. Thereafter, both Parties filed Motions for Summary Judgment concerning the propriety of remand to Arbitrator Goodstein. Having carefully considered the Motions, Responses, and Replies filed by both Parties to date, the Court now turns to the dispositive issues contained therein.

## II.

Summary judgment is appropriate *if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. See* Fed.R.Civ.P.

56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). When a motion for summary judgment is made, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Issues of material fact are "genuine" only if they require resolution by a trier of fact. *See id.,* 477 U.S. at 248, 106 S.Ct. at 2510. The mere *existence* of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. Only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment. *See id.,* 477 U.S. at 247–48, 106 S.Ct. at 2510. If the evidence is such that a reasonable fact finder could find in favor of the nonmoving party, summary judgment should not be granted. *See id.; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Dixon v. State Farm Fire & Cas. Co.,* 799 F.Supp. 691, 694 (S.D.Tex.1992) (noting that summary judgment is inappropriate if the evidence could lead to different factual findings and conclusions). Determining credibility, weighing evidence, and drawing reasonable inferences are left to the trier of fact. *See Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513.

Procedurally, the party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrates the absence of a genuine issue of material fact." *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553; *see also* Fed.R.Civ.P. 56(c). The burden then shifts to the nonmoving party to establish the existence of a genuine issue for trial. *See Matsushita,* 475 U.S. at 585–87, 106 S.Ct. at 1355–56; *Wise v. E.I. DuPont de Nemours & Co.,* 58 F.3d 193, 195 (5th Cir.1995). The Court must accept the evidence of the nonmoving party and draw all justifiable inferences in favor of that party. *See Matsushita,* 475 U.S. at 585–87, 106 S.Ct. at 1355–56. However, to meet its burden, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts," but instead, must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.,* 475 U.S. at 586–87, 106 S.Ct. at 1355–56 (quoting Fed.R.Civ.P. 56(e)).

## III.

In its Motion for Summary Judgment, the Union seeks to remand this action to Arbitrator Goodstein for clarification and final determination of the remedies properly owing to Jackson under the arbitration award. In contrast, Defendant BP, as expressed in its counter Motion for Summary Judgment, urges this Court to dismiss Plaintiff's lawsuit and allow the Parties to proceed with a new grievance/arbitration procedure in settling this collateral dispute. While the Parties concur on the law undergirding the remand of arbitration awards generally, they differ widely on the application of the law to the facts at hand. The Union argues that remand is appropriate in the instant case because Arbitrator Goodstein's award is incomplete and/or has generated a collateral question arising from the language of the award. BP, however, maintains that remand is not authorized because the present dispute does not involve the "interpretation" of an arbitration award, which would be appropriate for remand, but rather, the "application" or "implementation" of an award, which falls expressly outside the purview of remandable issues. While the Court commends both sides for their excellent briefs, it is com-

pelled to agree with Plaintiff that remand is appropriate in the instant case.[1]

■ The present inquiry involves the doctrine of functus officio, which, in the law of arbitration, refers to the notion that once an arbitrator has issued a final arbitration award, he may not later revise it. *Glass, Molders, Pottery, Plastics and Allied Workers Int'l Union v. Excelsior Foundry Co.*, 56 F.3d 844, 845 (7th Cir. 1995) (citations omitted). This doctrine is based on the analogy of a judge who resigns his office, and, having done so, cannot rule on a request to reconsider or amend his decision. *Id.* at 846. However, as other courts have previously recognized, the doctrine of functus officio has been substantially diminished by the federal courts over the years, so much so that today it is arguably "hanging on by its fingernails and whether it can even be said to exist in labor arbitration is uncertain." *Id.* (citations omitted).

Section 301 of the LMRA grants courts the power to remand a case to the arbitrator. 29 U.S.C. § 185. The Fifth Circuit has sanctioned the practice of remanding a labor dispute to the arbitrator for disposition of an unresolved issue where necessary to provide the parties to the collective bargaining agreement those benefits of arbitration "for which the parties bargained." *United Steelworkers of America v. W.C. Bradley Co.*, 551 F.2d 72, 73 (5th Cir.1977). Of particular relevance to the instant dispute is the Fifth Circuit's decision in *San Antonio Newspaper Guild Local No. 25 v. San Antonio Light Division*, 481 F.2d 821 (5th Cir.1973). In *San Antonio Light*, the Fifth Circuit addressed a somewhat analogous issue to the one presented here—namely, whether a dispute over the financial implications of an arbitration award for a wrongfully terminated employee should be remanded to the original arbitrator or channeled through a new grievance/arbitration procedure. The original arbitrator in *San Antonio Light* had ruled that the grievant employee should be reinstated and "shall be made whole for any loss in earnings" for the relevant time period. *Id.* at 822. After the issuance of such award, however, the parties could not reach agreement as to the exact amount of back pay owed to the grievant, and the dispute was forwarded to a second arbitrator for clarification. The Fifth Circuit observed initially that "[t]he normal course of action in such cases, then, is for the court to remand the matter to

---

1. In their Motions, both Parties hint at the possibility that the Court should itself resolve the collateral question of what bumping and bidding rights were available to Jackson on April 24, 2000. While the Court acknowledges that a court may on occasion find that the answer to a collateral dispute is implicit in the arbitration award, the occurrence of this circumstance is exceedingly rare. *See Oil, Chem. & Atomic Workers, Int'l Union, Local 4–367 v. Rohm & Haas, Texas Inc.*, 677 F.2d 492, 495 (5th Cir.1982) (citation omitted). Instead, collateral questions are generally themselves questions for arbitration. *Id.* Furthermore, the Fifth Circuit has repeatedly declined to review the merits of an arbitration award, much less resolve the collateral questions generated from such an award, in recognition of the federal policy of settling labor disputes by arbitration. *See, e.g., id.* at 493–94 ("[T]he effect would be to request that we review the merits of the arbitrator's decision refusing to require a return to the prior procedure. This we cannot do."); *San Antonio Newspaper Guild Local No. 25 v. San Antonio Light Div.*, 481 F.2d 821, 825 (5th Cir.1973) (rejecting the idea that the court should itself resolve the ambiguity in the arbitration award because "where the parties have elected to submit their disputes to arbitration, they should be completely resolved by arbitration, rather than only partially resolved"). Because the answer to the instant dispute is not implicit in the actual arbitration award, and because it would be inappropriate for the Court to determine on its own the substantive remedies provided under Arbitrator's Goodstein award, the Court focuses solely on the issue of the propriety of remand.

the original arbitrator for clarification." *Id.* at 825. However, since the requested clarification had already been effected by a second arbitrator, the court eventually upheld the second arbitrator's interpretation. *Id.* at 826. With regard to the possibility of resolving the dispute through an entirely new grievance procedure, the Fifth Circuit opined briefly in a footnote: "There may be, however, special circumstances where the invocation of grievance machinery might be appropriate following the award of an arbitrator. Ordinarily this would occur where a *collateral* dispute arises from an award which is not self-executing." *Id.* at 824 n. 3 (emphasis in original) (citing *Int'l Ass'n of Machinists and Aerospace Workers v. Aerojet Gen. Corp.*, 263 F.Supp. 343 (C.D.Cal.1966); *District 50, United Mine Workers v. Revere Copper and Brass, Inc.*, 204 F.Supp. 349 (D.Md.1962)). The court then concluded that the award in *San Antonio Light* was clearly self-executing, save for a solitary ambiguity, and therefore was not subject to a new grievance procedure. *Id.*

Following its decision in *San Antonio Light*, the Fifth Circuit more precisely defined the contours of the exception to the doctrine of functus officio. In *Oil, Chemical & Atomic Workers Int'l Union, Local 4-367 v. Rohm & Haas, Texas Inc.*, 677 F.2d 492 (5th Cir.1982), the plaintiff union sought to apply an arbitration award prospectively to similarly situated cases. In denying the union's request to remand the issue to the original arbitrator, the Fifth Circuit affirmed the district court's holding that remand to the arbitrator is the appropriate disposition of an enforcement action only "when an award is patently ambiguous, when the issues submitted were not fully resolved, or when the language of the award has generated a collateral dispute." *Id.* at 495 (citing *United Papermakers and Paperworkers v. Westvaco Corp.*, 461 F.Supp. 1022 (W.D.Va.1978)). The court further elaborated: "A remand is not appropriate, however, where it would force a decision on an issue not previously submitted to the arbitrator. Under those circumstances, the Plaintiff must again invoke the grievance and arbitration procedure in order to resolve the collateral issue." *Id.* (footnote and citations omitted). Because the issue of prospective application had not been previously presented to the arbitrator in *Rohm*, the Fifth Circuit declared that anew grievance process would be preferable to remand. *Id.* Since the rule announced in *Rohm*, the Fifth Circuit has remanded cases to arbitrators on several occasions. *See, e.g., Oil, Chem. and Atomic Workers, Int'l Union, Local No. 4-228 v. Union Oil Co. of Cal.*, 818 F.2d 437, 442–43 (5th Cir.1987) (deciding that the arbitrator should reevaluate the issue of whether employee's termination was for just cause because the parties had bargained for the arbitration of this grievance, and new information was available affecting the arbitrator's findings); *Int'l Chem. Workers Union v. Day & Zimmerman, Inc.*, 791 F.2d 366, 372–73 (5th Cir.1986) (upholding district court's remand of grievance to arbitrator for purpose of fashioning appropriate monetary remedy and determining whether award would include compensation for violations under subsequent collective bargaining agreements).

Other appellate courts have evinced a similar or even broader willingness to remand claims to the issuing arbitrator. In *Glass, Molders*, the plaintiff union filed a grievance contesting the discharge of an employee who flunked a test for cocaine and failed to complete a drug rehabilitation program. 56 F.3d at 845. The arbitrator ordered the defendant corporation to reinstate the employee if he completed a rehabilitation program within 60 days of the rendition of the arbitration award. *Id.* Later, the grievant asked the arbitrator to clarify who should pay for the rehabilitation program, and incidentally, whether

the 60–day period recommenced from the date of the arbitrator's clarification of the award. *Id.* at 845–46. In determining whether the arbitrator in *Glass, Molders* possessed the authority to clarify the award, Judge Posner of the Seventh Circuit detailed extensively the history and purpose of the doctrine of functus officio, and ultimately concluded that any "award that fails to address a contingency that has arisen after the award was made is incomplete; alternatively, it is unclear; either way, it is within an exception to the doctrine." *Id.* at 847. In applying this rather expansive standard, the Seventh Circuit held that the arbitrator's conduct was proper because it fell within the "clarification-completion exception" to the doctrine of functus officio. *Id.* at 848.

The First Circuit has also approved of remanding an action to the arbitrator in a fact scenario strikingly similar to the instant one. In *Locals 2222, 2320–2327, International Brotherhood of Electrical Workers v. New England Telephone and Telegraph Co.*, 628 F.2d 644 (1st Cir.1980), the plaintiff union and defendant employer arbitrated the related questions of whether an employee had been terminated for just cause, and if not, what the appropriate remedy would be under the collective bargaining agreement. *Id.* at 645. The arbitrator issued an opinion stating that the employee had not been discharged for just cause, and that the employee should be reinstated with full compensation for lost earnings. When a conflict later arose concerning the exact amount of back pay owed to the employee, the union requested to resubmit the issue to the original arbitrator for clarification, while the employer sought to exhaust an entirely new grievance/arbitration procedure. *Id.* In addressing the parties' dispute, the First Circuit recognized the vague distinction drawn by other courts between the "interpretation" of an award, which is appropriate for remand, and the "application" or

"implementation" of an award, which is thought to raise new issues under the bargaining agreement that should be resolved anew. *Id.* at 648. However, the First Circuit expressed doubt that the parties' case could be so "neatly analyzed," since the determination of the specific amount of back pay would likely involve interpretation, as well as application and implementation of, the arbitration award. *Id.* at 649. Relying in significant part on the Fifth Circuit's opinion in *San Antonio Light*, the First Circuit eventually held that the district court had properly remanded the case to the arbitrator because the unresolved remedy issue was within the scope of the parties' original submission to the arbitration board. The court reasoned: "By giving to the present Arbitration Board the remedy matter as a part of the overall question of the propriety of the discharge under Article 9.03(a), the parties were, we believe, necessarily inviting construction by the arbitrators of the Article's remedy provision as well. The Company was certainly on notice that, incident to any finding of wrongful discharge, the original arbitrators, who were specifically asked to determine the appropriate remedy, would have to define, to whatever extent seemed necessary, the scope of the lost wage remedy provided by the bargaining agreement." *Id.*

Based on *San Antonio Light*, its progeny, and the widespread erosion of the doctrine of functus officio by the various appellate courts, the Court concludes that remand to the original arbitrator is appropriate in the instant case. Like the First Circuit, the Court finds the vague delineation between "interpretation" of an award, and "application" or "implementation" of an award, to be generally unhelpful in adjudicating these types of remand inquiries. In the present case, for example, the determination of the precise bumping and

bidding rights available to Jackson arguably involves both an "interpretation" of the language and intent of the arbitration award, as well as an "application" or "implementation" of Arbitrator Goodstein's judgment that Jackson should be afforded the rights available to him on April 24, 2000. In some sense, then, both the Union and BP are correct in taking their respective contradictory positions.

Notwithstanding this linguistic ambiguity, however, the Court has no trouble in deciding that the instant case is appropriate for remand to the original arbitrator under the three criteria set forth in *Rohm*. First, the Court agrees with BP that the subject arbitration award is not patently ambiguous. Arbitrator Goodstein employed clear and concise language in his opinion, and the award unambiguously ordered BP to allow Jackson to exercise the bumping and bidding rights available to him on April 24, 2000. However, the Court also agrees with the Union that the question of the precise remedy deserving to Jackson under Arbitrator Goodstein's award is properly characterized as an issue originally submitted to the arbitrator that was not fully resolved and/or that represents a collateral dispute generated by the language of the award. In either case, the mandated result is remand to the original arbitrator. In the case alleged here, the Union and BP submitted two separate but related inquiries for final resolution before Arbitrator Goodstein, i.e., whether BP had just cause for discharging Jackson, and if not, what the appropriate remedy would be. By virtue of this submission, BP explicitly consented to and was on notice that Arbitrator Goodstein, upon determining that Jackson had been wrongfully discharged, would impose a remedy to redress such wrong. That Arbitrator Goodstein may have fashioned the remedy in such a way as to leave certain issues unresolved and/or create certain collateral questions does not alter the fact that the

current dispute between the Parties falls squarely within the scope of Arbitrator Goodstein's initial charge.

Furthermore, BP's insinuation that the present arbitration award is somehow not self-executing, and therefore not remandable, is wholly unfounded. Quite unlike the cases cited by BP (which notably, are in no way binding on this Court), the remedy question at issue here was not specifically delegated to the parties for negotiation and final resolution, nor was it a question that was not previously submitted to the arbitrator. *See, e.g., United Auto., Aerospace and Agric. Implement Workers of America, Local 149 v. Abex Friction Products Div.*, 1995 WL 130914, Civ.A. No. 94–0043–H, at *1–2 (W.D.Va. Mar.10, 1995) (declaring that an arbitration award was not self-executing because it required the parties to enter into negotiations and continue bargaining in order to settle the dispute); *United Papermakers and Paperworkers v. Westvaco Corp.*, 461 F.Supp. 1022, 1023–24 (W.D.Va.1978) (classifying an arbitration award as not self-executing where the arbitrator merely directed the company to "reexamine" the contested job assignments and essentially decided that "the matter should be resolved by the parties themselves"); *Int'l Ass'n of Machinists and Aerospace Workers, Local Lodge No. 1893, District Lodge No. 80 v. Aerojet–General Corp.*, 263 F.Supp. 343, 345 (C.D.Cal.1966) (stating that the question of which individual workers were entitled to the benefits of the arbitration judgment was not submitted to the arbitrator, and therefore the arbitration award was not self-executing on this particular point); *Dist. 50, United Mine Workers of America v. Revere Copper and Brass, Inc.*, 204 F.Supp. 349, 351–52 (D.Md.1962) (holding that the award was not self-executing because it reserved to the parties any decisions regarding the applicability of the award to specific employees). In light of

these cases, then, the instant arbitration award is not rightfully classified as a non self-executing and nonremandable award. Rather, as evidenced by the case law emanating from the Fifth Circuit, as well as other circuit courts, the present dispute involves an unresolved issue previously submitted to the arbitrator and/or a collateral question generated by a self-executing award that is clearly appropriate for remand.

In addition to the overwhelming legal authority favoring remand, the Court notes that requiring the Union to invoke and exhaust the burdensome and time-consuming grievance machinery once again to resolve "the remnants of a dispute which has already once traveled that route" would seriously undermine the federal interest in facilitating the "speedy, flexible and inexpensive resolution of labor disputes." *Locals 2222*, 628 F.2d at 649 (citation omitted). The purpose of arbitration, and the underlying reason for the federal laws facilitating it, is to resolve disputes fairly and efficiently, not to create new ones. *See id.* The Union in this case has already once exhausted the lengthy grievance/arbitration process on the question of remedies owed to Jackson, and the Court can conceive of no legitimate policy justification for forcing it to do so again. The reinvocation of the grievance machinery in this case would not only be shamefully wasteful of resources and grossly inefficient, but it would be manifestly unfair to Plaintiff, who inevitably would have to bear the economic and other costs of the new procedure. On the basis of the formidable federal policy favoring arbitration and the efficient resolution of disputes, the Court further finds that remand is appropriate in the instant case.

## IV.

For all of the reasons set forth above, the Court holds that the present dispute between the Parties is appropriate for re-mand to the original arbitrator. The Court accordingly hereby **GRANTS** Plaintiff's Motion for Summary Judgment, and hereby **DENIES** Defendant's Motion for Summary Judgment. Furthermore, and pursuant to its authority to remand labor disputes under § 301 of the LMRA, the Court hereby **REMANDS** this action to Arbitrator Barnett Goodstein with the specific respectful request that Arbitrator Goodstein clarify the arbitration award by determining and setting forth *exactly* what bumping and bidding rights were available to Jackson under the collective bargaining agreement on April 24, 2000, such that the Parties may fully and finally resolve this issue. Finally, in acquiescence to the resolution of this dispute via the arbitration process, the Court hereby **STAYS** and **ADMINISTRATIVELY CLOSES** this case pending further Order of the Court. Each Party is to bear its own taxable costs and expenses incurred herein to date.

**IT IS SO ORDERED.**