530 F.2d 126
 91 L.R.R.M. (BNA) 2506, 78 Lab.Cas. P 11,285
 Dale C. RICHARDSON, Appellant-Cross-Appellee,
v.
COMMUNICATIONS WORKERS OF AMERICA, AFL-CIO, and Local 7495,
CommunicationsWorkers of America, AFL-CIO,
Appellees-Cross-Appellants.
 Nos. 75--1564, 75--1614 and 75--1645.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Dec. 8, 1975.
Decided Feb. 13, 1976.
Rehearing and Rehearing En Banc
Denied, in No. 75--1564
March 11, 1976.
 
 J. Patrick Green, Omaha, Neb., for Communications Workers of America, etc., and others.
 Robert E. O'Connor, and J. Patrick Green, Omaha, Neb., for Communications Workers of America, AFL-CIO.
 David S. Lathrop, Omaha, Neb., for Local 7495 of the Communication Workers of America, AFL-CIO.
 Dan J. Whiteside, Orange, Cal., Edward F. Fogarty, Omaha, Neb., and Rex H. Reed, Washington, D.C., Edith D. Hakola, Fairfax, Va., for Dale C. Richardson.
 Before MATTHES, Senior Circuit Judge, and STEPHENSON and WEBSTER, Circuit Judges.
 STEPHENSON, Circuit Judge.
 
 
 1
 This is the third appeal arising out of this litigation. The issues raised in plaintiff's appeal and in the cross-appeals by the defendants cannot be placed in proper focus without briefly reviewing the history of the case, which is now here after the third jury trial.
 
 
 2
 Plaintiff brought this action under section 301(a) of the Labor Management Relations Act, 1947, 29 U.S.C. § 185(a). He sought damages against a former employer, Western Electric Company, Inc. (Company), and the Communications Workers of America, AFL-CIO (International) and its Local 7495 (Local). The jury found that plaintiff was wrongfully discharged in breach of the collective bargaining agreement by the Company, and that the wrongful discharge was caused by actions of the International and the Local in violation of the nondiscrimination clause of the agreement which prohibited discrimination because of nonmembership in the union. Plaintiff was awarded a verdict in the amount of $20,000 which was reduced by the trial judge[1] to $1500 for the reason that the bargaining agreement could have terminated six and one-half months after plaintiff's discharge. This court reversed and remanded for new trial holding that plaintiff was entitled to damages for loss of earnings extending beyond the collective bargaining agreement, in view of the character of the work involved, the nine years plaintiff had been with the Company, the strong likelihood of his continued employment with the Company, the probability of renewal of the collective bargaining agreement and the severance of seniority rights. We ordered a new trial limited solely to the damage issues as to plaintiff's claim for relief under section 301. We directed that the jury was entitled to consider the evidence as to the activity of the Union (initially treated as a single entity)[2] in inducing the wrongful discharge so that it might then apportion the damages between the Company and the Union on the basis of their respective roles in causing the discharge. We directed that damages should include future earnings and an evaluation of seniority rights plaintiff may have had which were lost. We also dircted that plaintiff be given an opportunity to plead against the Union, as a separate count, damages for mental distress for the alleged violation of its statutory duty to avoid intentional discrimination against him up to and including the time of his discharge. Richardson v. Communications Workers, 443 F.2d 974 (8th Cir. 1971).
 
 
 3
 After remand plaintiff filed an amended complaint alleging two causes of action, the first against the Company and the two unions for wrongful termination of his employment, and the second against the unions for mental anguish. On the first claim for loss of employment the jury returned a verdict in favor of plaintiff Richardson in the sum of $92,000, apportioned 30% to the employer, Western Electric, and 70% to the unions, pursuant to the district court's direction to treat the two unions as joined. Upon Richardson's second claim for mental anguish against the unions, the jury awarded him $250,000.
 
 
 4
 Upon motion of the unions the district court granted a new trial on the second claim (Count II) for mental distress, anguish and humiliation upon the grounds that the jury 'rendered its verdict as the result of passion, prejudice, mistake, or some other improper reason.' In its discussion the district court stated '(i)t is clear that the verdict was excessive and intended to punish the defendants or resulted from some other improper reason.'[3] However, the court denied the motion of the unions to set aside the verdict or grant a new trial on the first claim (Count I), for lost wages, benefits and seniority rights in the amount of $64,400. This court, upon certification under Fed.R.Civ.P. 54(b), affirmed the judgment on Count I. See Richardson v. Communications Workers, supra, 486 F.2d 801 (8th Cir. 1973).[4] Western Electric did not appeal from the judgment against it on Count I in the amount of $27,600.
 
 
 5
 In the third trial the jury returned a verdict in favor of each defendant union on the mental distress claim under Count II. The court ordered that judgment enter in favor of each defendant on the jury verdict. The court further ordered that plaintiff recover from the defendant unions the sum of $10,000 for his reasonable attorney fees in the prosecution of his claim on Count I that the wrongful discharge of plaintiff was caused by actions of the unions.
 
 
 6
 In this appeal plaintiff Richardson charges (1) the order for a new trial on the mental distress issue (Count II) was an abuse of discretion; (2) prejudicial errors in the recent trial (Count II) require a new trial; and, (3) the allowance of $10,000 in attorney fees was unreasonably low. The unions, in addition to denying plaintiff's charges, urge by cross-appeals that the award of attorney fees to plaintiff was improper.
 
 Order for New Trial
 
 7
 Plaintiff claims the trial court abused its discretion in ordering a new trial on the mental distress claim upon the grounds that the $250,000 award was excessive and 'the result of passion, prejudice, mistake, or some other improper reason.' Plaintiff argues that since in this case the inference of passion or prejudice was drawn from the size of the verdict alone, a remittitur or a new trial limited to damages would have adequately remedied the supposedly erroneous verdict, without resorting to the penalty of a new trial.
 
 
 8
 In excessive verdict cases we have held that 'whether the ends of justice will be served by ordering a reduction of the verdict, or whether a new trial must be had, are primary questions for the trial court.' Perry v. Bertsch, 441 F.2d 939, 943 (8th Cir. 1971). The function of the reviewing court in such cases is limited to a determination of whether the trial court abused its discretion in making the determination it did. Id. See also Bankers Life & Casualty Co. v. Kirtley, 307 F.2d 418, 426 (8th Cir. 1962).
 
 
 9
 The standard we apply for review of the trial court's refusal to set aside a jury verdict on the grounds of excessiveness or inadequacy was reviewed by Judge Blackmun, now Justice Blackmun, in Solomon Dehydrating Co. v. Guyton, 294 F.2d 439, 447--48 (8th Cir. 1961) and is summarized as follows:
 
 
 10
 (I)n our opinion, inadequacy or excessiveness of a verdict is basically, and should be, a matter for the trial court which has had the benefit of hearing the testimony and of observing the demeanor of the witnesses and which knows the community and its standards; that this is a responsibility which, for better working of the judicial process and for other seemingly obvious reasons, is best placed upon its shoulders; and that we shall continue to consider review, as we have said before, not routinely and in every case, but only in those rare situations where we are passed to conclude that there is 'plain injustice' or a 'monstrous' or 'shocking' result.
 
 
 11
 We have continued to adhere to this standard. Snodgrass v. Nelson, 503 F.2d 94 (8th Cir. 1974); Scoville v. Missouri Pacific Railroad, 458 F.2d 639 (8th Cir. 1972); Century '21' Shows v. Owens, 400 F.2d 603, 611--12 (8th Cir. 1968). We have also held that the standard we will apply in determining whether there was an abuse of discretion in ordering a remittitur is whether the remittitur was ordered for an amount less than the jury could reasonably find. Slatton v. Martin K. Eby Construction Co., 506 F.2d 505 (8th Cir. 1974). In applying this standard we reiterated the Solomon standard, supra, 294 F.2d at 447, that inadequacy or excessiveness of a verdict is basically a matter for the trial court.
 
 
 12
 In summary, we will not disturb a trial court's grant of a new trial for an excessive verdict absent a clear abuse of discretion. Here the trial court properly recognized that plaintiff's damages arising from invidious discrimination were to be measured in terms of the mental distrees, anguish and humiliation caused him, but not as a means of punishing defendants. The court concluded 'that the verdict was excessive and intended to punish the defendants or resulted from some other improper reason' and ordered that a new trial be granted. We are satisfied from our review of the record that the trial court did not abuse its discretion in ordering a new trial in lieu of a remittitur. Perry v. Bertsch, supra, 441 F.2d at 943.[5]
 
 
 13
 Neither was there an abuse of discretion in failing to limit the new trial to damages only. The nature of the case was such that the liability and damages issues were interwoven to such an extent that a trial on damages alone would have been inappropriate. Plaintiff's claim for mental anguish and humiliation involved conduct by a larger number of individuals over a seven-month period. In determining damages to be awarded against the Local or International, or neither or both, it was necessary for the jury to determine who committed what acts and the responsibility of the parties under applicable principles of agency. Thus the issues of damages and liability were so intertwined as to be inseparable. Under these circumstances a partial trial on damages alone would have been improper. See Gasoline Products Company v. Champlin Refining Co., 283 U.S. 494, 500, 51 S.Ct. 513, 75 L.Ed. 1188 (1931); Vidrine v. Kansas City Southern Railway, 466 F.2d 1217, 1221 (5th Cir. 1972); United Air Lines, Inc. v. Wiener, 286 F.2d 302, 306 (9th Cir. 1961). No abuse of discretion in granting a new trial on all issues arising under the mental anguish claim has been shown here.[6]
 
 
 14
 Alleged Prejudicial Errors in the Third Trial
 
 
 15
 Plaintiff urges that the court erred in refusing to direct a verdict of liability against both defendants in the third trial because of the jury's findings with respect to (1) the unions' failure in good faith to fairly represent plaintiff in processing his grievance; (2) the unions' breach of their duty not to discriminate against or intimidate plaintiff because of his nonmembership in the union; and, (3) the unions' actions in causing the wrongful discharge of plaintiff. See 443 F.2d at 977--78. The difficulty is that these findings were made with respect to the section 301 claim and this court therefore remanded for a new trial limited solely to the damage issues. However, as to the mental distress claim arising from intentional discrimination this court clearly directed that it was to be submitted to the jury to pass on both liability and damages. See 443 F.2d at 985 n. 14. Obviously the claim for mental distress 'is separate and distinct from the Union's responsibility for its apportioned damage with the employer under § 301(a).' 443 F.2d at 983.
 
 
 16
 While the jury in the first trial had found that the unions were responsible for plaintiff's discharge and had discriminated against him, it did not specify what conduct caused his discharge nor what conduct constituted discrimination. In the instant trial plaintiff offered evidence with respect to various acts which caused him mental distress. In determining liability of either or both of the unions on the distress issue, it was incumbent on the jury to decide what acts actually occurred and who was responsible. The trial court therefore properly denied plaintiff's motion to direct liability against the defendants.
 
 
 17
 Plaintiff charges the court erred in refusing to instruct the jury that the Local and the International were a single entity.[7] We disagree. Under 29 U.S.C. § 303 the responsibility of a union for the acts of its officers and members 'is to be measured by reference to ordinary doctrines of agency.' United Mine Workers v. Gibbs, 383 U.S. 715, 736, 86 S.Ct. 1130, 1144, 16 L.Ed.2d 218 (1966). The provisions in the International's constitution with respect to control, without more, do not establish an agency relationship for the purposes of this case. See United Mine Workers v. Coronado Coal Co.,259 U.S. 344, 395, 42 S.Ct. 570, 66 L.Ed. 975 (1921); Barefoot v. International Bhd. of Teamsters, 424 F.2d 1001, 1004 (10th Cir. 1970). The single entity claim was properly submitted to the jury under appropriate instructions. Great Coastal Express, Inc. v. International Bhd. of Teamsters,511 F.2d 839, 843--44 (4th Cir. 1975).
 
 
 18
 Plaintiff next complains that certain agency instructions were erroneous. The court's instructions with respect to the unions' responsibility for the conduct of their officers, stewards, and members were thorough, and in conformance with the ordinary doctrines of agency which were applicable. Gibbs, supra, 383 U.S. at 736, 86 S.Ct. 1130; Wagner Electric Corp. v. Local 1104, Int'l Union of Radio and Machine Workers, 496 F.2d 954 (8th Cir. 1974). Plaintiff's objections fail to take into consideration the instructions as a whole. We are satisfied from our examination of the instructions that no error was committed therein.
 
 
 19
 Plaintiff contends the court erred in refusing to sustain his written motion prior to trial challenging for cause all active members of the AFL-CIO unions. Seven veniremen were active members of AFL-CIO unions. All but one were excused by the court upon admission of bias. Our juror not excused belonged to a union affiliated with the AFL-CIO. He was a member of the International Brotherhood of Carpenters. In response to inquiry by plaintiff's counsel he indicated he had not attended a union meeting in years and had not heard anything about the union's attitude toward right-to-work laws. We find no abuse of discretion on the part of the trial court in refusing to disqualify summarily all union members without some indication of bias. None has been shown.[8]
 
 
 20
 Plaintiff urges that we reverse and order a new trial on the grounds that the verdict was contrary to the weight of the evidence. Taking the evidence most favorable to the defendants as we must, we hold there was adequate basis in the record to warrant a jury finding in favor of the defendant unions.
 
 Allowance of Attorney Fees
 
 21
 Following the second trial in which the jury returned a verdict of $92,000 on Count I and $250,000 on Count II the district court entered its order granting the new trial on Count II and, finding no just cause to delay, ordered entry of judgment on Count I. Fed.R.Civ.P. 54(b). Thereafter, plaintiff filed a timely motion to modify the judgment on Count I to include an award of attorney fees. Three days later defendant unions filed their motion of appeal on Count I. Subsequently the district court sustained a motion by plaintiff to postpone a hearing on his motion for attorney fees until the issues on Count II were finally resolved. Subsequent to the jury's verdict in favor of defendant unions on Count II the district court after a hearing awarded plaintiff $10,000 'for legal fees in the prosecution of this case.'
 
 
 22
 In this appeal plaintiff contends the attorney fee awarded was unreasonably low. Defendant unions contend this case is not a proper case for an allowance of attorney fees; the claim for fees filed after entry of judgment was untimely; the award thereof after our mandate affirming the judgment on Count I was beyond the authority of the district court; all claims arising under Count I were merged in the judgment thereon; and, plaintiff's 'satisfaction of judgment' bars the subsequent award of fees.
 
 
 23
 We are satisfied that the district court had jurisdiction to hear the motion for fees despite the fact that the claim for attorney fees was neither pled nor fully proven at the trial. Sprague v. Ticonic National Bank, 307 U.S. 161, 59 S.Ct. 777, 83 L.Ed. 1184 (1939). Further, the mandate of this court affirming the judgment on Count I did not encompass the claim for attorney fees. Sprague, supra. Thus the claim for attorney fees was neither untimely nor its consideration beyond the authority of the district court. Further, when plaintiff executed the 'satisfaction of judgment' on Count I the postponed hearing on attorney fees had not been held. Thus, plaintiff's claim for fees was not merged in the judgment that was satisfied. We agree with the district court that it had the authority to make an award of attorney fees on the motion then pending even though a satisfaction of judgment had been entered.[9]
 
 
 24
 This brings us to the question of whether this was a proper case for an allowance of attorney fees. The district court found:
 
 
 25
 There was evidence from which the jury could have found that union officials not only failed to pursue the plaintiff's employment rights, but that they actually lobbied for his discharge from employment. In any event, without speculating as to what may have motivated the jury, it is clear from the manner in which the damages were apportioned that the jury regarded the unions' breach as aggravated. The Court agrees, to the extent that in the absence of mitigating circumstances the intentional failure of a labor union to discharge its fiduciary duty represents bad faith and establishes the plaintiff's right to recover his reasonable counsel fees.
 
 
 26
 In Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975), the Supreme Court recognized certain exceptions to the 'American rule' that attorney fees are not ordinarily recoverable by the prevailing party in federal litigation absent statutory authorization. These include 'when the losing party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons." Id. at 258--59, 95 S.Ct. at 1622, quoting from F.D. Rich Co. v. United States ex rel. Indus. Lumber Co., 417 U.S. 116, 129, 94 S.Ct. 2157, 40 L.Ed.2d 703 (1974). See Doe v. Poelker, 515 F.2d 541, 547 (8th Cir. 1975).
 
 
 27
 In the original trial the jury found in answer to special interrogatories that the Unions breached that part of the collective bargaining agreement which proscribed discrimination against employees because of nonmembership in the Union. It also found that plaintiff's wrongful discharge was proximately caused by actions of the Unions. 443 F.2d at 977--78. The district court found that the intentional failure of the Union to discharge its fiduciary duty to nonmember employees represented bad faith and established plaintiff's right to recover attorney fees.
 
 
 28
 We conclude from our examination of the record that there is ample support for a finding of bad faith on the part of the Unions in not only failing to represent plaintiff in his grievance but in actually inducing his wrongful discharge. We agree that this is a proper case for an award of attorney fees on Count I because the Unions' bad faith comes within the bad faith exception noted in Alyeska. Accord, Doe v. Poelker, supra, 515 F.2d at 547--49.
 
 
 29
 Plaintiff made application to the district court for an award of attorney fees in the amount of $168.375 based upon the rate of $75 per hour for 2,245 hours of legal service. Plaintiff now claims the court's award of $10,000 for attorney fees was unreasonably low.[10] Plaintiff further claims it was error to award costs against the plaintiff in the third trial. Defendants having prevailed in the third trial, plaintiff's claim for costs is devoid of merit.
 
 
 30
 The burden was on plaintiff to establish the time which he had spent in prosecuting his claim on Count I. Grunin v. International House of Pancakes, 513 F.2d 114, 127--28 (8th Cir. 1975). He failed to separate the portion of his time spent in the unsuccessful prosecution of his claim on Count II. The allowance of attorney fees rests with the discretion of the trial court and will not be disturbed absent a showing of an abuse of discretion. Grunin, supra, 513 F.2d at 126. We find no such abuse here.[11]
 
 
 31
 Affirmed.
 
 
 
 [1]
 The Honorable Richard E. Robinson, then Chief Judge, United States District Court for the District of Nebraska
 
 
 [2]
 It was not until the section 301 suit was remanded for trial on damages that the International and the Local urged that the respective liability of each should be separately determined. Richardson v. Communications Workers, 486 F.2d 801, 803--04 (8th Cir. 1973)
 
 
 [3]
 The district court pointed out that punitive damages are not permitted in Nebraska. Plaintiff made no claim for punitive damages
 
 
 [4]
 Prior thereto plaintiff's appeal from the order for new trial and the unions' appeal from the $64,400 judgment was dismissed by this court for lack of jurisdiction, on the grounds that the order for new trial was not an appealable order and the judgment against the unions had not been certified under Fed.R.Civ.P. 54(b). Richardson v. Communications Workers, 469 F.2d 333 (8th Cir. 1972)
 
 
 [5]
 We consider plaintiff's claim that the district court applied erroneous legal standards in denying the motion for new trial on the grounds of excessiveness to be devoid of merit
 
 
 [6]
 We need not reach defendants' claim that the verdict was the product of an appeal to passion and prejudice by plaintiff's improper and prejudicial 'golden rule' argument to which defendants objected. See Chicago & N.W. Ry. v. Kelly, 84 F.2d 569, 576 (8th Cir. 1936); Klotz v. Sears, Roebuck & Co., 267 F.2d 53 (7th Cir. 1959)
 
 
 [7]
 In the second trial (first trial on mental distress) the court had so instructed. In the instant (third) trial the court left the issue of agency as between the International and the Local to the jury
 
 
 [8]
 Claimed errors because of comments made by the trial court in ruling on evidence are so devoid of merit that discussion thereof is not warranted
 
 
 [9]
 The district court commented that at the hearing on attorney fees 'the defendants have made no effort to demonstrate that the parties intended the attorney's fee claim to be included in the Satisfaction of Judgment.'
 
 
 [10]
 Plaintiff further claims that failure to include expenses in the award was error. The record indicates costs were taxed in the regular way by the clerk and were not challenged as provided for in Fed.R.Civ.P. 54(d). This challenge will not now be considered
 
 
 [11]
 Sizeable attorney fees were collected by plaintiff's attorney on the Count I award of $92,000. Plaintiff's attorney had been retained on a contingent fee basis